Alex Rate
ACLU of Montana
P.O. Box 1968
Missoula, MT 59806
Telephone: (406) 224-1447
Email: ratea@aclumontana.org

*Attorney for Plaintiffs*

APR 14 2025
Clerk, U.S. Courts
District of Montana
Missoula Division

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| JOHN ROE and JANE DOE,<br><br>    Plaintiffs,<br><br>-vs-<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>    Defendants. | Case No. _____<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. On or about April 4, 2025, the United States Department of Homeland Security ("DHS") began to unilaterally terminate the F-1 student status of numerous students throughout the United States under the Student and Exchange Visitor

1

Information Systems (SEVIS).[1] SEVIS is the government database used both by DHS and universities to track and document the status of international students' compliance with their F-1 visa. Plaintiffs John Roe and Jane Doe are two of these students who have unlawfully had their F-1 status terminated.

2. Neither DHS or Immigration nor Immigration and Customs Enforcement ("ICE") provided Plaintiffs or their schools any meaningful explanation for terminating their F-1 student status. Neither plaintiff has been convicted of any crimes in the United States or elsewhere.

3. Plaintiffs are full-time international students with lawful F-1 status, enrolled at one of Montana's public universities, Montana State University, Bozeman (MSU). Both have dedicated a significant portion of their life, energy, and efforts to pursing advanced degrees/degrees in higher education. Roe has been pursuing a Ph.D. in electrical engineering/physics since 2019. Doe has been pursuing a master's degree in microbiology since 2021. Neither of them has been convicted of committing any crime in the United States, nor having

---

[1] Elizabeth Román, *5 Umass Amherst Students Have Visas Revoked*, New Hampshire Public Radio (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass- amherst-students-have-visas-revoked; Katy Stegall & Esmeralda Perez, *Five USCD Students' Visas Revoked and Additional Person Deported, University Confirms*, CBS 8 (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students- f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e- f6bd92a287b3; Molly Farrar, *Feds Quietly Revoke Visas of Multiple UMass, Harvard students*, Boston.com (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

violated any immigration law. Additionally, neither has been active in on-campus protests regarding any political issue.

4. After dedicating countless years and enormous energy and efforts, Plaintiffs' dreams of completing their advanced degree programs and obtaining their Ph.D. and master's degrees (respectively) at Montana State University is in severe jeopardy because of DHS' abrupt termination of his F-1 status under the SEVIS system.

5. Instead of being notified by DHS or any other government agency, on April 10, 2025 both Plaintiffs received emails from MSU informing them that their SEVIS records were terminated. According to MSU, the SEVIS database indicated the following about both Plaintiffs: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

6. The emails also provides that "[w]hen a student's record is terminated, that student is expected to depart the United States immediately. Unlawful presence in the United States could result in arrest, detention or deportation by federal authorities."

7. MSU did not provide any additional information as to why Plaintiffs' student status was terminated.

8. This news shocked Plaintiffs and has left them feeling vulnerable and anxious. During the multiple years that each has dutifully maintained their F-1 student status, they have not violated any rules governing the maintenance of that status, such as "fail[ing] to maintain a full course of study[.]" *See* 8 C.F.R. § 214.2(f)(5)(iv). In fact, Plaintiffs have been star students and model members of their respective school communities.

9. These students are two among hundreds, if not more, of F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by U.S. immigration agencies.

10. ICE, through the Student Exchange and Visitor Program (SEVP), uses SEVIS to monitor student status. Following the revocation of their visas, SEVP terminated Plaintiff Student's SEVIS record. ICE is one of the component agencies of DHS.

11. An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through SEVIS system, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3. MSU has been approved to sponsor F-1 students.

12. The termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, however, ICE is not authorized to terminate Plaintiffs'

student status. The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiffs' SEVIS record. An F-1 visa controls a student's entry into the country - not their continued lawful presence once admitted. Plaintiffs were in full compliance with the terms of their F-1 status and had not engaged in any conduct that would warrant termination of their status.

13. Rather, DHS's policy of unlawfully terminating SEVIS records based on visa revocations appears to be designed to coerce students, including Plaintiffs, into abandoning their studies and "self-deporting" despite not violating their status. If ICE believes a student is deportable for having a revoked visa, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

14. Over the past week, visa revocations and SEVIS terminations have shaken campuses across the country and in Montana, including students in the Montana University System. On information and belief, this policy appears to be primarily targeting African, Arab, Middle Eastern, Muslim, and Asian students. The SEVIS terminations have taken place against the backdrop of numerous demands made of universities by the federal government and threats of cutting off billions of dollars in federal funding. The federal government has created

chaos as schools attempt to understand what is happening and do their best to inform and advise students.

15. Plaintiffs do not challenge the revocation of their visa in this action. Rather, Plaintiffs brings this action under the Administrative Procedure Act (APA) and the Declaratory Judgment Act to challenge ICE's illegal termination of their SEVIS record.

## JURISDICTION AND VENUE

16. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (federal defendant), and 5 U.S.C. § 702 (right of review).

17. Venue is proper in the United States District Court for the District of Montana under 28 U.S.C. § 1391(e), as at least one Plaintiff and at least one federal officer Defendant reside in Montana.

18. This Court is authorized to grant the requested relief under 5 U.S.C. § 706, 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1651, and the Court's equitable powers.

## PARTIES

19. **Plaintiff John Roe** is a 39-year-old graduate student at Montana State University, where he has been pursuing his Ph.D. in electrical engineering/physics since 2019. He is a citizen of Iran.

20. He received his F-1 visa to study in the United States on July 26, 2016, from the United States embassy at Nicosia, Cyprus. He first entered the United States on August 5, 2016, in Auburn Alabama to study at Auburn University, where he ultimately received his master's of science degree in experimental condensed matter physics in July 2019.

21. His F-1 visa and permission to study and work in university were issued by Montana State University and is valid through August 21, 2026.

22. As part of his Ph.D. program is employed by MSU as a researcher.

23. He currently resides in Bozeman, Montana and has a sister who resides in Boulder, Colorado where she is enrolled in a graduate program at the University of Colorado.

24. He has never been convicted of a crime in the United States. Nor has he been active in on-campus protests regarding any political issue.

25. Roe has elected to proceed under pseudonym based on a legitimate fear of retaliation based on his immigration status. Roe is fearful of being doxed, targeted and/or harassed because of his immigration status.

26. **Plaintiff Jane Roe** is a graduate student at Montana State University where she has been working towards a master's degree in microbiology since 2021. She is a citizen of Turkey and currently resides in Bozeman, Montana.

27. She first arrived in the United States on an F-1 visa in 2014 and previously completed a dual undergraduate degree program in biotechnology at Montana State University, Bozeman in 2017.

28. As part of her master's degree program she has been employed at MSU as a teacher's assistant for pre-nursing and pre-medical classes and is scheduled to complete my master's degree program and graduate on May 8, 2025. She has never been convicted of a crime in the United States. Nor has she been active in on-campus protests regarding any political issue.

29. **Defendant Kristi Noem** is the Secretary of the Department of Homeland Security ("DHS"). She is sued in her official capacity.

30. **Defendant Todd Lyons** is the Acting Director of the Immigration and Customs Enforcement ("ICE"), a component of DHS. He is sued in his official capacity.

31. **Defendant Robert Lynch** is the Field Office Director of ICE's Detroit Field Office and would be the official in charge of any attempt to arrest or detain Plaintiffs. He is sued in his official capacity.

## LEGAL FRAMEWORK

32. A nonimmigrant visa controls a noncitizen's admission into the United States - not their continued stay. Congress established a statutory basis for student visas under 8 U.S.C. § 1101(a)(15)(F)(i), requiring that a noncitizen engage in a full course of study to maintain nonimmigrant status. Once admitted in F-1 status, a

student is granted permission to remain in the United States for the duration of status (D/S) as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

33. The SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visits and track their compliance with terms of their status. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials (DSOs) must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations. Termination must be based on a student's failure to maintain status.

34. DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

35. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)(g) outlines specific circumstances where certain conduct by nonimmigrant visa

holders, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

36. With respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status...." Minor misdemeanor offenses do not meet this threshold for termination based on criminal history.

37. The second category, termination of status by DHS, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits DHS to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. DHS cannot otherwise unilaterally terminate nonimmigrant status.[2]

---

[2] See *Jie Fang v. Dir. United States Immig. & Customs Enf't*, 935 F. 3d 172, 185 n. 100 (3d Cir. 2019).

38. Accordingly, the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation after a student has been admitted into the United States, because the student is permitted to continue the authorized course of study.[3]

39. ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[4] Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[5]

40. While a visa revocation *can* be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings.[6] The

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[4] *Id.*

[5] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on- visa-revocation.

[6] 8 USC § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).

11

immigration judge may also even dismiss removal proceedings when a visa is revoked, so long as a student is able to remain in valid status.[7] Only when a final removal order entered would status be lost.

41. A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA § 237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter.

42. The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[8] There is also no administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record constitutes final agency action for purposes of APA review.[9]

## FACTUAL ALLEGATIONS

43. Plaintiff Roe has been working towards a Ph.D. in electrical engineering/physics at MSU since 2019 and is on track to earn his Ph.D. in

---

[7] 8 C.F.R. § 1003.18(d)(ii)(B).

[8] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

[9] *See Fang*, 935 F.3d at 185.

December, 2025. He is a member of the Kurdish ethnic minority group which has faced historical and ongoing challenges, including discrimination and persecution by the Iranian government. While in the United States, he has not participated in any significant political activity.

44. Plaintiff has one family member who also resides in the United States, a sister. As her only family member in the United States, Roe provides financial support to his sister.

45. On April 10, 2025, Montana State University informed Roe that his F-1 student status in SEVIS was terminated. The email specifically stated that "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." No further details or allegations were provided.

46. Roe does not understand why his student visa was revoked and his SEVIS record terminated as he has never been convicted of a crime in the United States or anywhere else.

47. Furthermore, Roe has complied with all rules and regulations as someone with F-1 Student Status. He does not know why his F-1 student status in SEVIS was terminated.

48. Plaintiff Doe has been working on her master's degree in microbiology at Montanan State University for the last three and a half years and is scheduled to complete her master's degree program and graduate on May 8, 2025. Doe is a

citizen of Turkey who currently resides in Bozeman, Montana. As part of her master's degree program, she has been employed at MSU as a teacher's assistant for pre-nursing and pre-medical classes. While in the United States, she has not participated in any significant political activity.

49. On April 10, 2025, Montana State University informed Doe that her F-1 student status in SEVIS was terminated. The email specifically stated that "Individual identified in criminal records check and /or has had their VISA revoked. SEVIS record has been terminated." No further details or allegations were provided.

50. Doe has never been convicted of a crime, and has complied with all rules and regulations as someone with F-1 Student Status. She does not know why her F-1 student status in SEVIS was terminated.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Fifth Amendment
*(Procedural Due Process)*

51. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

52. Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiffs have a constitutionally protected property interest in their SEVIS registration. See *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

53. Defendants terminated Plaintiffs' SEVIS record based on improper grounds without prior notice and without providing Plaintiffs an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

## SECOND CAUSE OF ACTION
### Administrative Procedure Act
(*Unauthorized SEVIS Termination*)

54. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

55. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law… in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;… [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

56. Defendants have no statutory or regulatory authority to terminate Plaintiffs' SEVIS record or status based simply on revocation of a visa. Additionally, nothing in Plaintiffs' criminal history or other history provides a basis for termination.

57. Therefore, Defendants' termination of Plaintiffs' SEVIS status is not in accordance with law, is in excess of statutory authority, and without observance of procedure required by law.

### THIRD CAUSE OF ACTION
### Administrative Procedure Act
*(Procedural Due Process)*

58. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

59. Under § 706(a) of the APA, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

60. Defendants terminated Plaintiffs' SEVIS record based on improper grounds without prior notice and without providing Plaintiffs an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment. Accordingly, Defendants' action is contrary to a constitutional right.

## FOURTH CAUSE OF ACTION
### Administrative Procedure Act
*(Arbitrary and Capricious SEVIS Termination)*

61. Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

62. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. § 706(2)(A).

63. Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiffs' SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made. Defendants' action is therefore arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiffs' SEVIS status was unlawful;

(3) Require Defendants to restore Plaintiffs' F-1 student status in the Student and Exchange Visitor Information System (SEVIS);

(4) Require Defendants to set aside the F-1 student status termination decisions as to Plaintiffs;

(5) Prohibit Defendants from terminating Plaintiffs' F-1 student status absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff, in which they will be entitled to review any adverse evidence and respond to such evidence prior to determining anew that any Plaintiff's F-1 student status should be terminated;

(6) Prohibit Defendants from arresting, detaining, or transferring Plaintiffs out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiffs out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as time to contest any such action;

(7) Prohibit Defendants from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status;

(8) Waive the requirement for bond or security. *See* Fed. R. Civ. P. 65(c);

(9) Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

(10) Grant such further relief as the Court deems just and proper.

Dated this 14th day of April, 2025.

*s/Alex Rate*
Alex Rate
ACLU of Montana
P.O. Box 1986
Missoula, MT 59806
Telephone: (406) 224-1447
Email: ratea@aclumontana.org

*Attorney for Plaintiffs*
