IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN ROE and JANE DOE, | CV 25–40–BU–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, | |
| Defendants. | |

On April 15, 2025, the Court issued a temporary restraining order ("TRO") mandating, in part, that Defendants restore Plaintiffs' F-1 student status in the Student Exchange Visitor Information System ("SEVIS") and temporarily enjoining Defendants from initiating removal proceedings against or deporting Plaintiffs on the basis of the termination of their SEVIS record. (Doc. 11.) The Court held a hearing on Plaintiffs' Motion for a TRO and Preliminary Injunction on April 29. (Doc. 22.) After argument and at the conclusion of the hearing, the Court issued a verbal order extending the TRO for a period of 14 days. (*Id.*) After

1

careful consideration of the Parties' arguments and submissions, the TRO will now be converted into a preliminary injunction.

## BACKGROUND

### I.    The F-1 Visa Program and SEVIS

The Immigration and Nationality Act ("INA") permits noncitizens to enroll in government-approved academic institutions as F-1 nonimmigrant students. *See* 8 U.S.C. § 1101(a)(15)(F); 8 C.F.R. § 214.1(a)(2). Foreign students may enter the United States on an F-1 visa, and, upon entry, be granted F-1 student status and remain in the United States for the duration of their status. "Duration of status" is defined as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified [] for attendance by foreign students, or engaging in authorized practical training following completion of studies." *Id.* § 214.2(f)(5)(i).

The U.S. Immigration and Customs Enforcement ("ICE"), a subagency of the Department of Homeland Security ("DHS"), administers the F-1 student program and tracks information on students with F-1 student status through the Student and Exchange Visitor Program ("SEVP"). *Id.* § 1372(a)(1)(A). To sponsor a student's F-1 status, an academic institution must first file an application for School Certification through the SEVIS program, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United

States. *Id*. § 214.3. Montana State University ("MSU") has been formally approved to sponsor F-1 students, and the institution has a Designated School Official ("DSO") to advise and oversee foreign students.

F-1 students may participate in two types of practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *Id*. § 214.2(f)(10). CPT is any "alternative work/study, internship, cooperative education or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." *Id.* § 214.2(f)(1)(i). OPT consists of temporary employment that is "directly related to the student's major area of study." *Id*. § 214.2(f)(10)(ii).

A nonimmigrant student who "fail[s] to maintain the nonimmigrant status in which the alien was admitted" is subject to removal from the United States. 8 U.S.C. § 1227(a)(1)(C)(i). A student fails to maintain their F-1 status for a number of reasons, including, for example, engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of greater than one year. *See* 8 C.F.R. § 214.1(e)–(g). The student must also maintain a full course of study at an educational institution certified by SEVP. *Id*. § 214.2(f)(5)(i). Separately, the Code of Federal Regulations permits the termination of nonimmigrant status in three specific circumstances: (1) a previously granted waiver under Section 212(d)(3) or (4) of the Act is revoked;

(2) a private bill to confer lawful permanent residence is introduced in Congress; or

(3) DHS published a notification in the Federal Register identifying national

security, diplomatic, or public safety reasons for termination. *Id.* § 214.1(d).

A nonimmigrant student who fails to maintain F-1 status must leave the

United States immediately or seek reinstatement. *Id.* § 214.2(f)(5)(iv). Though a

student may seek reinstatement of his status in SEVIS, the student is not required

to do so. *Doe v. Noem*, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025). The

United States Citizenship and Immigration Services ("USCIS") may consider

reinstating a student who demonstrates, among other things, that he "has not been

out of [valid F-1] status for more than 5 months at the time of filing the request for

reinstatement" or that "the failure to file within the 5 month period was the result

of exceptional circumstances and that the student filed the request for reinstatement

as promptly as possible under these exceptional circumstances." 8 C.F.R. §

214.2(f)(16)(i)(A). If USCIS does not reinstate the student's status, the student

may not appeal that decision. *Id.* § 214.2(f)(16)(ii).

## II.    The Present Dispute

Plaintiffs are full-time international students currently enrolled at MSU in

Bozeman, Montana. (Doc. 1 ¶ 2.) Roe, a citizen of Iran, received an F-1 visa to

study in the United States on July 26, 2016, and Doe, a citizen of Turkey, first

arrived in the United States on an F-1 visa in 2014. (Doc. 1 ¶¶ 20, 27.) Roe has

been pursuing a Ph.D. in electrical engineering since 2019, and Doe a master's

degree in microbiology since 2021. (*Id.* ¶ 3.)

On April 10, 2025, Plaintiffs received an email from MSU informing them,

for the first time, that their SEVIS record had been terminated. (Docs. 4 ¶ 17; 5 ¶

16.) According to the email, Plaintiffs' SEVIS record indicated the following:

"Individual identified in criminal records check and/or has had their VISA

revoked. SEVIS record has been terminated." (Docs. 6-2 at 2; 6-3 at 2.) The email

further provided that "international students with a terminated status are no longer

able to remain enrolled in classes," lose their employment authorization, and are

"expected to depart the United States immediately. Unlawful presence in the

United States could result in arrest, detention or deportation by federal authorities."

(*Id.*)

On April 14, 2025, Plaintiffs filed this lawsuit against Kristi Noem, in her

official capacity as Secretary of DHS, DHS, and Todd Lyons, in his official

capacity as Acting Director of ICE (collectively, Defendants), alleging that

Defendants unlawfully terminated their SEVIS records. (Doc. 1 ¶ 15.) Plaintiffs do

not challenge any revocation of their F-1 visa. (*Id.*)

Count I alleges that Defendants violated the Due Process Clause of the Fifth

Amendment to the U.S. Constitution by terminating Plaintiffs' SEVIS record based

on improper grounds, without prior notice, and without providing Plaintiffs an

opportunity to respond. (Doc. 1 ¶¶ 51–53.) Count II alleges that Defendants violated the Administrative Procedure Act ("APA") by terminating Plaintiffs' SEVIS record without statutory or regulatory authority. (*Id.* ¶¶ 54–57.) Count III alleges that Defendants violated the APA's procedural due process provision, 5 U.S.C. § 706(2)(B), by terminating Plaintiffs' SEVIS record based on improper grounds, without prior notice, and without providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 58–60.) And Count IV alleges that because Defendants failed to articulate the facts forming the basis for their decision to terminate Plaintiffs' SEVIS record, Defendants actions were "arbitrary, capricious, an abuse of discretion, or otherwise not accordance with the law." (*Id.* ¶¶ 61–63.) Plaintiffs seek declaratory and injunctive relief. (*Id.* at 18–19, ¶¶ 1–10.)

Also on April 14, Plaintiffs filed an Emergency Motion for a TRO and Preliminary Injunction. (Doc. 2.) On April 15, the Court issued a TRO for a period of 14 days mandating, in part, that Defendants restore Plaintiffs' SEVIS status. (Doc. 11.) The Court held a hearing on Plaintiffs' Motion on April 29 and, at the conclusion of the hearing, extended the TRO until May 13 to allow time to more fully consider the arguments offered. (*Id.*) Also at the April 29 hearing, counsel for Plaintiffs informed the Court that Plaintiffs' SEVIS records had been reinstated.

## LEGAL STANDARD

To obtain emergency injunctive relief—whether that be a temporary

6

restraining order or preliminary injunction—a plaintiff must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the equities balance in the plaintiff's favor; and (4) that preliminary injunctive relief would serve the public interest. *See Winter v. Natural Res. Def Council, Inc.,* 555 U.S. 7, 20 (2008).[1]

## DISCUSSION

### I.    Live Case or Controversy

On April 25, 2025, the government that announced ICE was in the process of restoring the SEVIS records of international students and developing a policy to provide a framework for future record terminations, thus calling into question whether this matter still presents a live case or controversy. Plaintiffs advanced several arguments in the affirmative, most compelling of which is the application of the doctrine of voluntary cessation. And though Defendants do not argue this case is moot, the Court must still determine whether it has jurisdiction.

---

[1] Defendants argue Plaintiffs seek a mandatory, versus a prohibitory, injunction, which requires a more stringent standard for relief. (Doc. 15 at 15.) The Court disagrees. Prohibitory injunctions prohibit a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (citation omitted). The *status quo ante litem* means "the last, uncontested status which preceded the pending controversy." *Id.* at 879 (citation omitted). In this case, *status quo ante litem* is the time when Plaintiffs' SEVIS record was active. Therefore, the Court will apply the standard set forth for prohibitory injunctions.

### A. Doctrine of Voluntary Cessation

"A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "[T]he standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrong behavior could not reasonably be expected to recur." *Id.* "The heavy burden persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.*

"[A] voluntary change in official stance or behavior moots an action . . . when it is absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rational for its changed practice(s), that the activity complained of will not recur." *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014) (internal quotation marks omitted). "[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case

moot, but it may do so in certain circumstances." *Id.* at 971.

Though the Ninth Circuit has "not set forth a definitive test for determining whether a voluntary cessation" reflected through policy change renders a case moot, it has enumerated several factors that may indicate mootness is more likely. *Id.* at 972. These factors include whether:

(1) the policy change is evidenced by language that is broad in scope and unequivocal in tone;

(2) the policy change fully addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case;

(3) th[e] case [in question] was the catalyst for the agency's adoption of the new policy;

(4) the policy has been in place for a long time; and

(5) since [the policy's] implementation[,] the agency's officials have not engaged in conduct similar to that challenged by the plaintiff.

*Id.* The Court is "less inclined to find mootness where the new policy could be easily abandoned or altered in the future." *Id.*

As discussed above, on April 25, DHS announced a reversal in its policy that resulted in the mass termination of international students' SEVIS records across the United States. At the April 29 oral argument, counsel for Defendants proffered that while a new SEVIS record policy is forthcoming, they have yet to receive any specific information or details. Therefore, Defendants explain, they declined to file

9

a supplemental notice of suggestion of mootness, as has been done in at least one other SEVIS-related case. *See Student Doe No. 1 v. Kristi Noem*, Doc. 28, 5:25-cv-00847-SSS-SHK.

Because DHS's policy was announced less than a month ago, and because Defendants cannot provide any information—let alone any specific information or timelines—the Court has little trouble concluding that the factors set forth in *Rosebrock* weigh against a finding of mootness. It is entirely unclear when the new policy will be implemented nor what the policy will entail because, at risk of an understatement, the Defendants approach to these particular issues presents an ever-changing landscape. In the absence of any information regarding DHS's new policy and any guarantees from Defendants regarding Plaintiffs' SEVIS records, the changes wrought by Defendants appear to fall squarely within the category of "easily abandoned or altered in the future." *A.O. v. Cuccinelli*, 457 F. Supp. 3d 777, 790 (N.D. Cal. 2020) (citation omitted); *see also Madan B. K. v. Noem*, Doc. 4, 1:25-cv-419-JMB-PJG. Accordingly, the Court finds this matter continues to present a live case or controversy.

## II.    Waiver of Sovereign Immunity for SEVIS Terminations

### A. The Privacy Act

The APA waives sovereign immunity for actions in federal district courts by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. But

10

the "waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702).

Defendants argue that Congress established the Privacy Act of 1974 to address claims to information held in government databases such as the SEVIS. (Doc. 15 at 19.) Therefore, Defendants maintain, the APA's waiver of sovereign immunity does not extend to Plaintiffs' claims. (*Id.*) Defendants are incorrect.

The Privacy Act governs lawsuits by citizens and permanent residents seeking to access or amend their records in government databases. 5 U.S.C. § 552a. The Act permits an individual to review agency records, request the agency to correct records, appeal to the agency head if an amendment is denied, and submit a statement of disagreement with the records. *Id.* § 552a(d)(1)–(4). The Act forbids disclosure of any record contained in government databases without written consent of "the individual to whom the record pertains," subject to certain exceptions. *Id.* § 552a(b). The Act defines "individual" as a "citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 552a(a)(2).

By its plain terms, the Act does not cover persons such as Plaintiffs, who are noncitizens and thus neither citizens nor lawful permanent residents of the United States. As a result, Plaintiffs' SEVIS records cannot be the "records" contemplated

11

by the Act. *Id.* § 552a(a)(4) (defining "record" as "an item, collection, or grouping of information *about an individual* that is maintained by an agency") (emphasis added). Moreover, the Court observes that even if Plaintiffs' claims could fall within the purview of the Privacy Act, that fact would still not preclude the APA claims. *See Liu v. Noem*, 2025 WL 1233892, at *9 (D. N.H. Apr. 29, 2025). "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." *Id.* (quoting *All. for Retired Ams. v. Bessent*, 2025 WL 740401, at *19 (D.D.C. March. 7, 2025)); *see also Madan B. K. v. Noem*, 2025 WL 1171572, at *5 (W.D. Mich. Apr. 23, 2025). Therefore, the Privacy Act does not foreclose relief under the APA.

### B. Preliminary Injunction—Likelihood of Success on the Merits of Counts II and IV, Violations of the APA

Plaintiffs argue the termination of Plaintiffs' F-1 status under the SEVIS system violates the APA and the Due Process Clause of the U.S. Constitution. (Doc. 3 at 19.) Because Plaintiffs demonstrate a likelihood of success on the APA claims contained in Counts II and IV, the Court need not address Plaintiffs' procedural due process claims under the Fifth Amendment and the APA. (*See* Doc. 1 ¶¶ 51–53, 58–60.)

### 1. Final Agency Action

Courts may not review an agency action under the APA unless it represents

a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An agency action is final when two conditions are satisfied: (1) the action "must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

Defendants argue the termination of a SEVIS record does not constitute a final agency action because there are no legal consequences and because Plaintiffs may seek administrative remedies. (Doc. 15 at 27, 29.) Defendants' arguments are misplaced.

First, this action appears to mark the "consummation" of the agency's decisionmaking process. As observed by the Western District of Washington, there "is no statutory or regulatory requirement that a student seek reinstatement" of their status in SEVIS. *Doe*, 2025 WL 1141279, at *3 (quoting *Jie Fang v. Director U.S. Imm. and Customs Enforcement*, 935 F.3d 172, 182 (3rd Cir. 2019)). More importantly, because neither immigration judges nor the BIA have authority to review SEVIS terminations or reinstatement requests, there is no "mechanism to review the propriety" of the original termination. *Id.* at *3 (citing *Jie Fang*, 935

F.3d at 185); *see also* 8 C.F.R. § 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS's decision. If USCIS does not reinstate the student, the student may not appeal the decision.").

Second, as will be discussed in greater detail below, the termination of Plaintiffs' SEVIS record implicates Plaintiffs' legal status in the United States and subjects them to a myriad of legal consequences. *See Bennett*, 520 U.S. at 177–78 (final agency action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow") (citation omitted). For example, in *Jie Fang*, several nonimmigrant students were notified that their SEVIS record and Form I-20 had been terminated, and, as a result, the students no longer had valid F-1 status and needed to "file for reinstatement" or "depart the United States immediately." 935 F.3d at 177. The Second Circuit determined this action constituted a final order and was reviewable under the APA. *Id.* at 182.

In consideration of the above, the Court joins several of its sister courts in concluding that the termination of a SEVIS record is a final agency action subject to judicial review. *See Madan B.K.*, 2025 WL 1171572, at *5 (preliminarily concluding that "the termination was a unilateral determination with immediate legal consequences over which Plaintiffs have no ability to seek administrative review"); *Patel v. Bondi*, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025) ("The SEVIS termination is a final agency decision susceptible to judicial review."); *He*

14

*v. Noem*, 2025 WL 1208254, at *5 (W.D. Wash. Apr. 25, 2025) (termination of SEVIS records is final agency action); *Doe*, 2025 WL 1141279, at *3 (same).

## 2. Arbitrary and Capricious Agency Action

Agencies are "bound by [their] own regulations so long as they remain in force." *Wallace v. Christensen*, 802 F.2d 1539, 1552, n.8 (9th Cir. 1986); *see also Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures."). Agencies are also required to adhere to internal procedures designed to provide protections to individuals. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). A court reviewing an agency's decision "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(a)(2)(A). An agency action is considered arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Ass'n v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 43 (1983).

If DHS wishes to terminate student status under the SEVIS system, they must comply with the Code of Federal Regulations. The regulations relevant here provide that F-1 student status may be terminated because the student fails to

maintain status, or the agency initiates a termination of status. 8 C.F.R. §§ 214.2(f),

214.1(d), (e)–(g). Agency-initiated termination is governed by Section 214.1(d),

which provides that:

> [T]he nonimmigrant status of an alien shall be terminated by
> the revocation of a waiver authorized on his or her behalf under
> section 212(d)(3) or (4) of the Act; by the introduction of a
> private bill to confer permanent resident status on such alien;
> or, pursuant to notification in the Federal Register, on the basis
> of national security, diplomatic, or public safety reasons.

Defendants do not argue that any of these mechanisms have been employed

in this case. Rather, Defendants offer only that Plaintiffs were identified "in

criminal records check and/or ha[ve] had their VISA revoked. SEVIS record

ha[ve] been terminated." (Docs. 6-2 at 2; 6-3 at 2.) In briefing, Defendants assert

that Plaintiffs' SEVIS records were terminated "due to their criminal history."

(Docs. 15 at 11; 15-1 ¶¶ 7, 10.)

On March 5, 2025, Plaintiff Roe was arrested and charged with two

misdemeanors before the Bozeman Municipal Court: Theft—first offense, in

violation of Montana Code Annotated § 45-6-301(1). (Doc. 18-5 ¶ 2.) Despite

there being two separate citations, both charges are filed as a first offense. (*Id.* ¶ 3.)

Roe has entered a plea of not guilty and has not been convicted of any offense in

this matter. (*Id.* ¶¶ 4–6.) Pursuant to Montana Code Annotated § 45-6-301(7)(a),

the maximum penalty allowed by law for Theft, first offense, is a fine not to

exceed $500. The statute does not authorize any term of incarceration for this

offense. *Id.*

On May 19, 2025, Plaintiff Doe was arrested and charged with misdemeanor Partner and/or Family Member Assault ("PFMA") in violation of Montana Code Annotated § 45-5-206. (Doc. 18-4 ¶ 2.) Pursuant to Montana Code Annotated § 45-5-206, the maximum penalty allowed by law for this charge is a fine not to exceed $1,000 and a period of incarceration not to exceed one year. Doe has entered a plea of not guilty and has not been convicted of any offense in this matter. (Doc. 18-4 ¶¶ 3–4.)

DHS's regulations explain the criminal activity that will result in a nonimmigrant's failure to maintain status. Specifically, the Code of Regulations provides:

> A condition of a nonimmigrant's admission and continued stay in the United States is obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed. A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status under section 241(a)(1)(C)(i) of the Act.

8 C.F.R. § 214.1(g).

During the April 29 hearing, counsel for Defendants argued Section 214.1(g) provides that a nonimmigrant must follow the law in order to maintain status; it does not, counsel continued, state that the only basis to terminate a SEVIS record

17

is a criminal conviction. While that may be, Defendants appear to rely solely on

Plaintiffs' criminal history as the basis for termination of their SEVIS records.

Section 214.1(g) clearly requires that, as a condition to a nonimmigrant's

continued stay in the United States, the nonimmigrant must obey "all laws of

United States jurisdictions which prohibit the commission of crimes of violence

*and for which a sentence of more than one year imprisonment may be imposed.*"

(emphasis added). Section 214.1(g) further provides that a "conviction" for "a

crime of violence for which more than one year imprisonment may be imposed []

constitutes a failure to maintain status." Plaintiffs' charges for theft and PFMA

clearly fail to satisfy these criteria. (*See* Docs. 18-4, 18-5.) One, Plaintiffs' charges

carry a maximum sentence of under one year imprisonment; Plaintiff Roe faces no

prison time should he be convicted of the crime for which he is charged. And two,

Plaintiffs have not been convicted of any crime.

The termination of Plaintiffs' SEVIS record must be supported by agency

regulations, and the Court remains unconvinced that any such support exists.

Defendants have therefore failed to meet "the general administrative-law

requirement that an agency 'articulate a satisfactory explanation for its action.'"

*Hernandez v. Garland*, 52 F.4th 757, 768 (9th Cir. 2022) (quoting *Motor Vehicle*

*Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43). The termination of Plaintiffs' SEVIS

records because of their criminal charges is inconsistent with agency regulations

18

and is therefore invalid. *See Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 852 (9th Cir. 2003). Accordingly, Plaintiffs are likely to succeed on the merits of the APA claims contained in Counts II and IV.

### 3.  Likelihood of Irreparable Harm

As a preliminary matter, Defendants argue that Plaintiffs conflate the termination of SEVIS records with the termination of F-1 statuses, and that Plaintiffs fail to proffer any evidence that ICE terminated their F-1 statuses. (Doc. 15 at 16.) Defendants continue that once Plaintiffs' SEVIS terminations are disentangled from their F-1 statuses, the entire basis for emergency relief disintegrates because there is no legitimate threat of irreparable harm from mere SEVIS terminations. (*Id.* at 17.) It does not appear that Plaintiffs respond directly to this argument.

However, at least one other court confronted with the recent wave of SEVIS-related litigation has observed that the government's termination of SEVIS records "effectively terminate[s]" the student's F-1 status. *See Doe v. Noem*, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025); *see also Jie Fang*, 935 F.3d at 177 (DHS advised student-plaintiffs that because their "SEVIS record has been Terminated, you no longer have valid F-1 nonimmigrant status and must either file for reinstatement [. . .] or depart the United States immediately."). Indeed, the Federal Regulations permit a student to lawfully remain in the United States for the

"duration of their status"—"defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP." 8 C.F.R. § 214.2(f)(1)(5)(i). Inability to enroll in classes as a result of their SEVIS termination certainly jeopardizes Plaintiffs' ability to maintain F-1 status.

At any rate, with respect to the harms flowing from SEVIS terminations, Defendants' argument is contradicted by DHS's own guidance. The agency's "Study in the States" website states, in part, that "[a] terminated record in the SEVIS could indicate that the nonimmigrant no longer maintains F-1 status and that an F-1 SEVIS record is terminated." https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last accessed May 9, 2025). The Study in the States website further warns that when an F-1 SEVIS record is terminated, the "[s]tudent loses all on-and/or off-campus employment authorization" and "Immigration and Customs Enforcement (ICE) agents may investigate/confirm the departure of the student." *Id.* MSU relied on DHS's directive in issuing its April 10 notification to Plaintiffs, warning, in pertinent part, that Plaintiffs must "cease all employment immediately" and "[w]hen a student's record is terminated, that student is expected to depart the United States immediately. Unlawful presence in the United States could result in arrest, detention or deportation by federal authorities." (Docs. 6-2 at 2; 6-3 at 2; 18-3 at 3.)

20

At this stage of the proceedings, it appears Defendants terminated Plaintiffs F-1 status or, at the very least, that the termination of Plaintiffs' SEVIS record will jeopardize their ability to maintain F-1 status. However, because Plaintiffs face legal consequences as a result of the termination of their SEVIS record, the Court need not get to the bottom of whether Plaintiffs' F-1 status was revoked. *See Roe*, 2025 WL 1141279, at *7 (finding that plaintiff "faces several forms of irreparable harm as a result of the termination of his SEVIS record").

First, the interruption to Plaintiffs' educational programs or progress constitutes an irreparable harm. MSU notified Plaintiffs that upon SEVIS termination, they cannot remain enrolled in classes. (Docs. 6-2; 6-3.) Plaintiff Doe has been pursuing her master's degree in biology at MSU for the past three and a half years. (Doc. 5 ¶ 9.) Doe was scheduled to complete her master's degree program and graduate with distinction on May 8, 2025. (*Id.* ¶ 12–15.) Doe attests that her ability to achieve this advanced degree is in jeopardy, and the "disruption has caused irreparable harm to both [her] academic journey and personal well-being, undermining years of effort and jeopardizing the continuation of [her] education." (*Id.* ¶ 24.) Plaintiff Roe has been pursuing his Ph.D. in electrical engineering/physics at MSU for the past six years. (Doc. 4 ¶ 7.) Roe is scheduled to receive his doctoral degree in eight months. (*Id.* ¶ 25.) The apparatus utilized in Roe's research is unique to MSU; his research cannot simply be transferred to a

21

new university. (*Id.* ¶¶ 22, 25.) Roe attests that "[a]ll of his life, effort, [and] energy has been and is for this degree," and that he has "no future and life without this degree." (*Id.*)

Second, as part of Plaintiff Doe's program, she has been employed as a teaching and research assistant. (*Id.* ¶¶ 9–11.) Likewise, as part of Plaintiff Roe's program, he has been employed by MSU as a research assistant and works approximately 60 to 65 hours per week. (*Id.* ¶ 8.) When an MSU student's SEVIS record has been terminated, the institution notifies the student that, as a result of their termination, they are no longer entitled to employment on or off campus. (Doc. 18-3 ¶ 6.) In making this determination, MSU relies on the DHS website Study in the States' admonition that, upon termination of a SEVIS record, the "student loses all on-and/or off-campus employment authorization." (*Id.* ¶ 7) (citation omitted). Plaintiffs received such a warning from MSU, and attest that the loss of work authorization places them in an "extremely difficult financial and academic position" as their research and teaching assistantships serve both as a source of income but also a core component of their academic training. (Docs. 4 ¶ 24; 5 ¶ 23.) The Court finds that the interruption to Plaintiffs' work authorization constitutes irreparable harm. *See Doe*, 2025 WL 1141279, at *8 (loss of employment authorization due to SEVIS termination constitutes irreparable harm).

Finally, Plaintiffs may face the risk of immediate detention, removal, or bar

to reentry due to failure to maintain compliance with the terms of their visas. *See Doe*, 2025 WL 1141279, at *7; 8 U.S.C. §§ 1227(a)(1)(B), 1182(a)(9)(B). However, because removal may be reversed, it is not, in and of itself, an irreparable harm. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). And, as Plaintiffs' counsel acknowledged during oral argument, the connection between the SEVIS record and revocation of Plaintiffs' F-1 visa, including the threat of removal, remains unclear at this point in the proceedings. Yet, despite this uncertainty, the Court observes that any harms resulting from removal proceedings would exacerbate the risks associated with Plaintiffs' ability to complete their academic programs and maintain employment. *See Doe*, 2025 WL 1141279, at *8.

In consideration of the above, Plaintiffs have successfully shown that, absent the relief provided for by a preliminary injunction, they will suffer irreparable harm for which an award of monetary damages would be insufficient.

### 4. Balance of Hardships and Public Interests

With respect to public interest, "when the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). Defendants argue that "[t]he public interest lies in the Executive's ability to enforce U.S. immigration laws." (Doc. 15 at 36.) Yet the public also "has a vested interest in a federal government

that follows its own regulations," *Doe*, 2025 WL 1141279, at *9, and the record before this Court demonstrates the government has failed to follow its own regulations and guidance. The relief requested restores Plaintiffs ability to remain in the United States to complete their degrees, and granting temporary relief in this instance will maintain the status quo. Defendants have not, notably, put forward any evidence demonstrating how a preliminary injunction would cause them injury or harm. On balance, the equities tip in Plaintiffs' favor.

### D. Bond Requirement

Pursuant to Federal Rule of Civil Procedure 65(c), in granting a preliminary injunction or temporary restraining order, the court must require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Ninth Circuit has found that "[d]espite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1068 (9th Cir. 2009) (citation omitted). "In particular, the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (citation and internal quotation omitted). Because it is unlikely any harm will come to Defendants as a result of this preliminary injunction, the Court exercises its discretion to waive the bond requirement

provided for by Rule 65(c).

### E. Judgment on the Merits versus Preliminary Injunction

Finally, Defendants argue that Plaintiffs' Motion effectively seeks a judgment on the merits. (Doc. 15 at 15–16.) The Court disagrees. Plaintiffs clearly frame their argument within the bounds of the well-established framework for issuing a preliminary injunction and seek only a restoration of the status quo enjoyed by Plaintiffs prior to the termination of their SEVIS records. And in issuing this preliminary injunction, the Court recognizes only that Plaintiffs have a "high chance of success on the merits"; this finding does not constitute a final judgment on the merits. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (findings at preliminary injunction or TRO posture are preliminary and do not bind the court at the trial on the merits).

### CONCLUSION

The Court finds that this matter continues to present a live case or controversy, is not barred by the Privacy Act, and satisfies the standards set forth for a preliminary injunction.

Accordingly, for the reasons stated above, IT IS ORDERED that Plaintiffs' Motion (Doc. 2) is GRANTED. Defendants are enjoined as follows:

(1) Defendants shall not terminate either Plaintiff's student status under the SEVIS absent a valid ground as set forth in 8 C.F.R. § 214.1(d), and

absent an adequate individualized pre-deprivation proceeding before an impartial adjudicator for each Plaintiff;

(2) Defendants shall set aside the April 10, 2025, termination of Plaintiffs' SEVIS record;

(3) Defendants are prohibited from arresting, detaining, or transferring either Plaintiff out of this Court's jurisdiction, or ordering the arrest, detention or transfer of either Plaintiff out of this Court's jurisdiction, without first providing adequate notice to both this Court and Plaintiffs' counsel as well as appropriate time to contest any such action; and

(4) Defendants are prohibited from initiating removal proceedings against or deporting either Plaintiff on the basis of the termination of their SEVIS record.

IT IS FURTHER ORDERED the security required by Federal Rule of Civil Procedure 65(c) is waived.

This Order shall remain in effect until further order by this Court.

DATED this 13th day of May, 2025.

Dana L. Christensen, District Judge
United States District Court

26