MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin Federal Courthouse
2601 2nd Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
Fax: (406) 657-6058
Email: mark.smith3@usdoj.gov

JOHN M. NEWMAN
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
101 E Front Street, Suite 401
Missoula, MT 59802
Phone: (406) 829-3336
Email: john.newman@usdoj.gov

Attorneys for Defendant
United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN ROE and JANE DOE,<br><br>　　　　　Plaintiffs,<br>　vs.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>　　　　　Defendants. | CV 25-40-BU-DLC<br><br><br>BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

EXHIBIT LIST ...................................................................................................v

INTRODUCTION ...............................................................................................1

STATUTORY AND REGULATORY BACKGROUND.......................................3

    A.    The F-1 Nonimmigrant Student Classification .....................................3

    B.    The Student and Exchange Visitor Information System (SEVIS)........6

FACTUAL BACKGROUND................................................................................10

    A.    Student Criminal Alien Initiative .........................................................10

    B.    Allegations of the Complaint ...............................................................12

STANDARD OF REVIEW ..................................................................................13

ARGUMENT .......................................................................................................15

    I.    This case is moot and must be dismissed ...........................................15

        A.    Plaintiffs' request to have their SEVIS records reactivated has been redressed ........................................................................15

        B.    Plaintiffs have F-1 status and never lost it ...............................16

        C.    Voluntary cessation doctrine does not apply ...........................22

        D.    Plaintiffs' request for forward-looking declaratory or injunctive relief is speculative.................................................25

CONCLUSION.....................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Already, LLC v. Nike, Inc.*,
568 U.S. 85, (2013)................................................................... 22, 24

*Berge v. Sch. Comm. of Gloucester*,
107 F.4th 33 (1st Cir. 2024)...................................................... 24, 27

*Boston Bit Labs, Inc. v. Baker*,
11 F.4th 3 (1st Cir. 2021)................................................................22

*California v. Texas*,
593 U.S. 659.................................................................. 13, 14, 25, 27

*Chafin v. Chafin*,
568 U.S. 165 (2013)........................................................................15

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)............................................................................14

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)........................................................................25

*Clarry v. United States*,
85 F.3d 1041 (2d Cir. 1996)............................................................27

*Fed. Bureau of Investigation v. Fikre*,
601 U.S. 234 (2024)................................................................... 25, 26

*Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)........................................................................22

*Gagliardi v. TJCV Land Tr.*,
889 F.3d 728 (11th Cir. 2018) .......................................................1, 15

*Jie Fang v. Immigration and Customs Enforcement*,
　935 F.3d 172 (3d Cir. 2019)................................................................21

*Massachusetts v. Mellon*,
　262 U.S. 447 (1923)..........................................................................14

*NAGE, Inc. v. Yellen*,
　120 F.4th 904 (1st Cir. 2024)........................................................ passim

*Religion Found., Inc. v. Concord Cmty. Sch.*,
　885 F.3d 1038 (7th Cir. 2018) ...........................................................24

*Rodríguez-Severino v. UTC Aero. Sys.*,
　52 F.4th 448 (1st Cir. 2022)...............................................................24

*Schmidt v. U.S.*,
　749 F.3d 1064 (D.C. Cir. 2014).........................................................16

*Silva v. Gonzales*,
　463 F.3d 68 (1st Cir. 2006)...................................................... 5, 8, 10

*Susan B. Anthony List* v. *Driehaus*,
　573 U. S. 149 (2014)........................................................................14

*Uzuegbunam v. Preczewski*,
　592 U.S. 279 (2021)..........................................................................13

*Vertex Tower Assets, LLC v. Town of Wakefield*,
　771 F. Supp. 3d 80, (D.N.H. 2025)....................................................16

**Statutes**

6 U.S.C. § 252(a)(4)...........................................................................1, 8
8 U.S.C. § 1101(a)(15)(F).........................................................................7
8 U.S.C. § 1372.......................................................................... 1, 6, 7
8 U.S.C. § 1372(a)(1)...............................................................................7
28 U.S.C. § 1746.....................................................................................24

## Regulations

8 C.F.R. § 103.2(b)(8)......................................................................................20

8 C.F.R. § 214.1(d) ........................................................................................27

8 C.F.R. § 214.2(f)(1)(i)....................................................................................4

8 C.F.R. § 214.2(f)(5) ......................................................................................5

8 C.F.R. § 214.2(f)(5)(i)................................................................................4, 11

8 C.F.R. § 239.3 ..............................................................................................6

## Other Authorities

86 Fed. Reg. ....................................................................................................1

## EXHIBITS

**Exhibit 1** – Hearing Transcript Excerpt in *Patel v. Lyons* (Watson)

**Exhibit 2** – Hearing Transcript Excerpt in *Bushireddy v. Lyons* (Watson)

**Exhibit 3** – Hearing Transcript Excerpt in *Bushireddy v. Lyons* (Hicks)

**Exhibit 4** – Declaration of Andre Watson

**Exhibit 5** – Declaration of Michelle Young

**Exhibit 6** – Declaration of Akil Baldwin

**Exhibit 7** – SEVP Policy

## INTRODUCTION

This case is now moot.[1]  Plaintiffs have received the relief requested, eliminating redressability.  They have no ongoing injury.  There is no risk that the challenged conduct will recur.  And they cannot show a substantial risk of future injury.  There is no longer any dispute for this Court to decide.  This case must be dismissed for lack of jurisdiction.

This lawsuit centers around the SEVIS database.  SEVIS is a law enforcement system of records used to track international students enrolled in educational programs in the United States.  86 Fed. Reg. 69,663, 69,668 (Dec. 8, 2021).  SEVIS contains a record about each international F, J, or M nonimmigrant student in the United States, and also contains information about their dependents and the school officials associated with the international student programs.  *Id.* at 69,664-665.  Congress granted Immigration and Customs Enforcement ("ICE") the authority to create and manage that system and to use it in immigration enforcement.  8 U.S.C. § 1372; 6 U.S.C. § 252(a)(4).

---

[1] Defendants maintain that there never was a live case or controversy because the SEVIS record is separate and apart from F-1 nonimmigrant status.  But, assuming there was a live case or controversy to begin with, there certainly is not now.  *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 732 (11th Cir. 2018) (assuming for purposes of argument that the appellants had standing at the outset of the suit and concluding that the lawsuit had become moot).

In April 2025, pursuant to the Student Criminal Alien Initiative ("SCAI"), ICE set to "terminated" the SEVIS records for the Plaintiffs and approximately 5,000 other students, based on National Crime Information Center ("NCIC") database checks. Confusion ensued as schools and students (including the plaintiffs here) misunderstood the significance of SEVIS, believing that the students' F-1 nonimmigrant *status* had been terminated. Lawsuits were filed around the country, including putative class actions and at least one case that named hundreds of plaintiffs. By May 6, 2025, ICE had reversed course, reactivating the SEVIS records. The plaintiffs in this lawsuit were included in that reactivation. But ICE did more than simply reactivate the records. It made the reactivation retroactive to the date of termination, it sent a letter to each student stating that the reactivation was retroactive, it issued a new policy guiding such terminations, and it stated that it would not terminate the records again based solely on the NCIC records that led to the initial termination. Furthermore, ICE and USCIS have explained that the termination of a SEVIS record is not a termination of, or adjudication of, F-1 student *status*. The status of the students was not changed by the SEVIS record change, nor did the record change reflect a reality that the status had changed. The SEVIS record terminations were an action taken in a law enforcement database, not an adjudication of status. The contrary

2

statements and beliefs of the Plaintiffs here, and schools and students across the country, were understandable but misinformed.

Thus, this case is now moot. Plaintiffs have received the requested relief, and ICE has stated in sworn declarations that it will not terminate Plaintiffs' SEVIS records again solely on the NCIC hit that led to the initial termination under the SCAI. There is no relief this Court can provide, which is the very definition of mootness. This Court lacks jurisdiction over this case, and it must be dismissed.

## STATUTORY AND REGULATORY BACKGROUND

### A.    The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status"). To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status (a "Form I-20"), issued by the

3

school, and (3) when applicable, submit a visa application at the U.S. Embassy or Consulate abroad.  *See* https://studyinthestates.dhs.gov/students/get-started/international-student-life-cycle (Accessed September 22, 2025); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements), *available at* https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-2 (Accessed September 22, 2025).

Once a student has received an F-1 visa from the State Department, the student may present himself or herself to a port of entry for admission to the United States.  At the port of entry, the applicant must present the Form I-20, issued by a certified school in the student's name and documentary evidence of financial support; and he or she must demonstrate he or she intends to attend the school specified on the visa.  8 C.F.R. § 214.2(f)(1)(i); *see also* USCIS Policy Manual, Vol. 2, Part F, Chapter 2 (Eligibility Requirements).  To maintain F-1 status, at a minimum a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training."  8 C.F.R. § 214.2(f)(5)(i); (f)(6)(iii); (f)(7)(iii) (failure to complete program on time because of academic probation or suspension); (f)(9) (restrictions on employment); (f)(12)(ii) (failure to comply with OPT reporting requirements).

Individuals admitted in F-1 status do not have a set time period for which they are admitted to the United States but instead are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). During that time, the students use their Form I-20 as proof of their status, for example to apply for a driver's license or other benefits, if available to them. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 ("Applying for Benefits") (Accessed September 22, 2025). The Form I-20 "proves that [the student is] legally enrolled in a program of study in the United States." *Id.* The Form I-20 includes an end-date for the program of study. *See* USCIS Policy Manual, Vol. 2, Part F, Chapter 8 (Change of Status, Extension of Stay, and Length of Stay) at paragraph C.1. A DSO can revise that end date and print a new I-20 for the student. *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/manage-program-dates-registration-and-course-load/manage-initial. If a student stays beyond their authorized end date (including any grace period), they

5

may be considered to be failing to maintain their nonimmigrant status. *See* USCIS Policy Manual, Vol. 2, Part F, Chapter 8.

An F-1 student admitted for the duration of status, who receives a decision from USCIS (through reinstatement or application for a change of status or other immigration benefit) concluding that he or she violated his or her nonimmigrant status will begin to accrue unlawful presence the day after that request is denied. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (Accessed September 22, 2025); *see also* 8 C.F.R. § 239.3.

**B.    The Student and Exchange Visitor Information System (SEVIS)**

SEVIS is "a law enforcement system of records." 86 Fed. Reg. at 69,668. It is the most recent iteration of a system created pursuant to a Congressional mandate that "[t]he [Secretary of Homeland Security][2], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect [certain information] from approved institutions of higher

---

[2] 8 U.S.C. § 1372 refers to the Attorney General, but those functions were transferred to DHS in the Homeland Security Act of 2002.

education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1). SEVIS "is a web-based system" that DHS "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," https://www.ice.gov/sevis/overview (Accessed September 22, 2025).

In 8 U.S.C. § 1372, Congress described the system of records that should be used to maintain information about F, J, and M students. It is separate from the nonimmigrant statuses described in 8 U.S.C. § 1101(a)(15)(F), (M), and (J), nor does § 1372 equate the records in the system to nonimmigrant status. Similarly, § 1372 does not state that the system of records is a method to adjudicate or terminate nonimmigrant status. *See* 8 U.S.C. § 1372. Indeed, nonimmigrant status existed long before SEVIS. Further, Congress mandated that ICE shall administer the program to collect information on nonimmigrant foreign students described in 8 U.S.C. § 1372 and "shall use" the information collected in SEVIS "to carry out

7

the enforcement functions of the agency," 6 U.S.C. § 252(a)(4), but it does not say that the system of records is the enforcement mechanism. *Id.* SEVIS is a database of information.

Consistent with § 1372 and the nature of SEVIS as a database, in 2021, in accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" its database under § 1372 as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. at 69,663. That Federal Register System of Records Notice explained that "[t]he purpose of this system of records is to maintain the integrity of the U.S. immigration system by collecting, maintaining, and analyzing information so that only bona fide nonimmigrant students or exchange visitors gain entry to the United States and that institutions accepting nonimmigrant students are legitimate and certified and adhere to the federal rules and regulations that govern them." *Id.* at 69,664. It further explained that DHS and the State Department use the system for various purposes, some of which relate to the students themselves and some of which are school-specific, including:

- "validat[ing] the identity of F/M/J nonimmigrants, federal government personnel, and school and program officials to ensure data integrity, accuracy, and proper data matching";

8

- "facilitat[ing] and support[ing] determination activities related to admissibility into the United States and the eligibility and status of benefits";

- "decid[ing] whether to certify a school or designate an EV Program so that F/M/J nonimmigrants may enroll or participate in the U.S.-based school or program";

- "support vetting of F/M/J nonimmigrants and their dependents and school and program officials" through the use "supplemental information such as open-source media (e.g., publicly available information in newspaper articles, school websites, government websites, social media sites and blogs, online forums)";

- "monitor[ing] the compliance of F/M/J nonimmigrants, schools, programs, and school and program officials with immigration laws and regulations";

- "perform[ing] administrative and criminal investigations related to the participation of F/M/J nonimmigrants, school and EV Program sponsors, and the schools and exchange visitor programs that enroll or seek to enroll individuals through the SEVP certification process, and to identify noncompliance with U.S. laws and regulations";

9

- "create[ing] and provid[ing] reports for analyzing compliance issues and identifying activities and related individuals (if needed) for evidence-based decision-making."

*Id.* at 69,664–665.

Consistent with these many identified purposes of the SEVIS database and the information therein, SEVIS contains biographical information such as name and date of birth, identity information such as fingerprint information and passports, criminal history, education information, employment information, financial support information, travel records, and case information such as "adjudication determinations; site visit reports; appeals determinations; administrative reviews; and information regarding investigations." *Id.* at 69,665–666. The information contained in SEVIS is obtained from "F/M/J nonimmigrants; proxy, parent, or legal guardians; school officials; program officials; federal and state government personnel; federal agency systems; governing bodies; and members of the public." *Id.* at 69,666.

## FACTUAL BACKGROUND

### A.    Student Criminal Alien Initiative

In March and April 2025, ICE engaged in what it called the Student Criminal Alien Initiative ("SCAI"). Ex. 2, May 5 Hrg. Tr. at 61:18-25 (Watson).

As part of that initiative, ICE searched for NCIC records pertaining to international students in the United States.  *Id.* at 62:2-13 (Watson); Ex. 1, April 29 Hrg 9:2-11 (Watson).  ICE's review led it to compile a list of approximately 6,400 students with NCIC hits which it sent to State Department for further review and potential action.  Ex. 2, May 5, Hrg. Tr. at 62:11-19, 63:20-64:25, 65:12-15 (Watson); Ex. 1, April 29, Hrg. Tr. at 11:15-12:15, 14:2-9 (Watson).  The State Department made recommendations to terminate SEVIS records in some instances and also revoked over 3,200 visas.  Ex. 2, May 5, Hrg. Tr. at 67:25-68:2 (Watson).  Ultimately, about 5,000 SEVIS records were terminated by ICE.  *Id.* 66:8-18; 68:12-24 (Watson); Ex. 3, May 5 Hrg. Tr. at 42:15-16 (Hicks).  That corresponds to less than half a percent of the over 1.3 million international students admitted to the United States.  *Id.* at 62:9-11; (Watson); Ex. 1, April 29 Hrg. Tr. at 9:2-11 (Watson).

As ICE and USCIS have explained in sworn declarations, the SEVIS record changes were *not* a change to the students' F-1 status.  Ex. 6, Baldwin Decl. ¶ 9; Ex. 5, Young Decl. ¶ 7.  F-1 students are admitted to the United States for duration of status, which is defined by 8 C.F.R. 214.2(f)(5)(i).  Ex. 5, Young Decl. ¶ 4.  The setting of or change of a SEVIS record designation is not an adjudication of the actual F-1 status.  *Id.* ¶ 7.  Rather, adjudications occur in connection with an

11

immigration benefit application or during proceedings before an immigration judge. *Id.* ¶¶ 9, 10.

Ultimately, by May 6, 2025, ICE reactivated the SEVIS records. Ex. 4, May 6 Watson Decl. ¶¶ 4-5. This was approximately one month after the records were terminated. *Id.* Critically, ICE did more than simply return the records' designation to "active." It also sent personalized letters to the F-1 students associated with the previously-terminated SEVIS records stating that the return of the SEVIS record to active was retroactive to the date of the termination such that there is no lapse in the record. Ex. 6, Baldwin Decl. ¶ 15. Since the terminations, ICE also issued a new policy regarding SEVIS terminations in which it states that it will not terminate a SEVIS record based upon a Department of State revocation that is effective upon departure rather than immediately effective. Ex. 7, ICE April 26, 2025, Policy. ICE has also stated in a sworn declaration that it will not "re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." Ex. 6, Baldwin Decl. ¶ 11.

## B.    Allegations of the Complaint

Plaintiffs are foreign students who were in the United States in F-1 nonimmigrant student status. Their SEVIS records were changed by ICE in April

12

2025 to show "terminated" rather than "active."  Plaintiffs filed a complaint for declaratory and injunctive relief under the Fifth Amendment and Administrative Procedure Act on April 14, 2025.  In addition to forward-looking relief prohibiting the government from initiating a number of actions, most pertinent to this motion, Plaintiffs seek: (1) a declaration that the termination of their SEVIS status was unlawful; (2) an order requiring Defendants to restore Plaintiffs' F-1 student status in SEVIS; and (3) an order requiring Defendants to set aside the F-1 student status termination decisions as to Plaintiffs.  Doc. 1 at 18.

## STANDARD OF REVIEW

"At all stages of litigation, a plaintiff must maintain a personal interest in the dispute.  The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings.  To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury.  And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021).

Furthermore, a claim for declaratory relief alone will not preserve standing because the Declaratory Judgment Act does not confer jurisdiction.  *California v.*

13

*Texas*, 593 U.S. 659, 672 (2021.  "To consider the matter from the point of view of another standing requirement, namely, redressability, makes clear that the statutory language alone is not sufficient."  *Id.* at 671.  That is because "[r]emedies . . . operate with respect to specific parties" and not "on legal rules in the abstract."  *Id.* at 672; *see also Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding").  Thus, "[t]o determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered."  *California*, 593 U.S. at 671.  Accordingly, the Supreme Court's "cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future."  *California*, 593 U.S. at 671-72 (collecting cases) (emphasis in original).  "In the absence of contemporary enforcement . . . a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'"  *California*, 593 U.S. 670–71 (citing *Susan B. Anthony List* v. *Driehaus*, 573 U. S. 149, 164 (2014)).  This doctrine is rooted in the principle that federal courts cannot issue advisory opinions.  *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("a federal court has no authority to give opinions upon moot questions or abstract propositions, or to

14

declare principles or rules of law which cannot affect the matter in issue in the case before it"); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.").

In short, "[m]ootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). A plaintiff's "personal stake in the action" is eliminated when there is no "persisting redressable injury." *NAGE, Inc. v. Yellen*, 120 F.4th 904, 911 (1st Cir. 2024). Claims "based on . . . past injuries" can become moot when circumstances change. *Id.*

## ARGUMENT

### I.    This case is moot and must be dismissed

#### A.    Plaintiffs' request to have their SEVIS records reactivated has been redressed

Plaintiffs initiated this litigation because the SEVIS records about them had been changed from an active designation to terminated. They have sought, from the outset, to have those records returned to active. That was completed months ago. *See* Ex. 4, May 6 Watson Decl. ¶ 5; Ex. 6, Baldwin Decl. ¶ 12. Thus, Plaintiffs' request for relief that the SEVIS records be returned to active cannot be

15

redressed by the Court because it has already been redressed by ICE.  *See, e.g.,*

*Vertex Tower Assets, LLC v. Town of Wakefield*, 771 F. Supp. 3d 80, 89, (D.N.H.

2025) (claims resolved by defendant during pendency of lawsuit moot); *see*

*also Schmidt v. U.S.*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (court can "provide no

effective remedy" when "a party has already obtained all the relief that it has

sought").

To the extent Plaintiffs argue that the record change is insufficient because

the database record history shows that the record had been terminated at one point,

ICE has also addressed that concern.  ICE has stated under oath that the

reactivation is retroactive.  Ex. 4, May 6 Watson Decl., ¶ 7; Ex. 6, Baldwin Decl.

¶ 13.  Furthermore, ICE has sent individualized letters to each Plaintiff stating that

the reactivation of the SEVIS record is retroactive to the date of record

termination.  Ex. 6, Baldwin Decl. ¶ 15.  Thus, as to the record itself, there is

nothing left for this Court to address.

**B.    Plaintiffs have F-1 status and never lost it**

Plaintiffs alleged in their Complaint that ICE improperly terminated their F-

1 student status and then reflected those status terminations in the SEVIS records

about them.  Plaintiffs argue the SEVIS record and status are inextricably linked.

*See, e.g.,* Doc. 1 at 18 (equating restoration of SEVIS record with restoration of F-

1 status).  These allegations, and indeed Plaintiffs' entire Complaint, are based upon a misunderstanding of SEVIS, as explained in more detail below.  But even if this Court were to accept as true Plaintiffs' allegations that the SEVIS record and F-1 status are inextricably linked, reactivation of the SEVIS record would thus reflect reactivation of the F-1 student status, and because the SEVIS record has been reactivated, so too then, under Plaintiffs' theory, has their F-1 status, making the claims moot.  *NAGE*, 120 F.4th at 911.

However, the reality is that Plaintiffs never lost their F-1 status and the request to restore it was never redressable, as shown by the evidence of record. First, declarations from ICE and USCIS show that a SEVIS record termination is not a termination of F-1 *status*.  *See* Ex. 6, Baldwin Decl. ¶ 9; Ex. 5, Young Decl. ¶ 7.  The Young Declaration explains ways in which F-1 nonimmigrant *status* could be terminated or adjudicated.  *See* Ex. 5, Young Decl. ¶¶ 8–10.  None of those actions are alleged to have occurred here.

Those declarations are entirely consistent with other evidence of record concerning SEVIS.  First, SEVIS is a law enforcement database that contains records about foreign nationals, schools, designated school officials, and others involved in the student nonimmigrant programs.  86 Fed. Reg. at 69,668.  It is a *tool* used by DHS and Department of State to support other functions, and those

17

functions were explained publicly in the Federal Register on December 8, 2021,

over three years before the actions that led to this litigation. *See id.; see also*

https://studyinthestates.dhs.gov/schools/report/maintaining-accurate-sevis-records

(Accessed September 22, 2025). That Notice describes SEVIS's use as

"validat[ing] the identity of F/M/J nonimmigrants"; "facilitat[ing] and support[ing]

determination activities related to admissibility into the United States and the

eligibility and status of benefits"; "support vetting of F/M/J nonimmigrants and

their dependents and school and program officials"; "monitor[ing] the compliance"

with immigration laws and regulations; "perform[ing] administrative and criminal

investigations related to the participation of F/M/J nonimmigrants, school and EV

Program sponsors, and the schools and exchange visitor programs"; "create[ing]

and provid[ing] reports for analyzing compliance issues and identifying activities

and related individuals (if needed) for evidence-based decision-making." 86 Fed.

Reg.at 69,664–665. Nothing in the Notice suggests that SEVIS is a method by

which ICE can adjudicate F-1 student status. Indeed, the only evidence Plaintiffs

have ever presented to show that their F-1 student status was "terminated" are

communications from their schools, not DHS.

In fact, the evidence shows that the SEVIS record and F-1 student status are

not inextricably linked: setting the SEVIS record to terminated does not terminate

18

F-1 student status, nor is a SEVIS record terminated only when F-1 student status is terminated.  By way of example, a school can terminate a SEVIS record, *see* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (Accessed September 22, 2025), but there is no allegation that in doing so the school terminates a student's nonimmigrant status, nor is there any evidence that the government has delegated the authority to terminate nonimmigrant status to schools.  Indeed, ICE notes that "termination is not always negative.  DSOs can terminate records for several normal, administrative reasons."  *Id.*  Similarly, if a school mistakenly terminates a SEVIS record, it can have that record reactivated by ICE, but there is no indication that the mistaken termination affects the student's nonimmigrant status or that such status must be remedied after a mistaken termination.  *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/corrections-and-correction-requests/correction-requests/correct-1 (Accessed September 22, 2025).  The fact that a school can terminate a SEVIS record without terminating a student's nonimmigrant status shows that SEVIS record and status are not inextricably linked.

USCIS's policy on accrual of unlawful presence is in accord.  The USCIS Policy Manual explains that "[i]n general, F-1 students admitted for duration of

19

status who violate the terms of their status, begin to accrue unlawful presence the day after USCIS or an immigration judge determines that they have violated their nonimmigrant status."  Policy Manual Vol. 2, Part F, Chapter 8, section 2.A, https://www.uscis.gov/policy-manual/volume-2-part-f-chapter-8 (Accessed September 22, 2025).  Indeed, USCIS explained in a sworn declaration that it does not equate termination of the SEVIS record with termination of immigration status or an adjudication of an immigration benefit, and if USCIS saw that a SEVIS record was terminated and reactivated, it would continue processing a benefit request.  Ex. 5, Young Decl. ¶¶ 7, 11.  Even if USCIS required an explanation of information in the SEVIS record when adjudicating a benefit application (such as a request for work authorization or change or status), it could seek that information from the applicant through a "Request for Evidence" or "Notice of Intent to Deny." *See, e.g.,* 8 C.F.R. § 103.2(b)(8).  There is no allegation here that any of the plaintiffs have had their status adjudicated by USCIS through a benefit application, or by an immigration judge in immigration proceedings.

The declarations are also consistent with information on DHS's website which explains that the I-20 is a student's proof of status, not the SEVIS record. *See* https://studyinthestates.dhs.gov/students/prepare/students-and-the-form-i-20 (Accessed September 22, 2025) ("Your Form I-20 proves that you are legally

enrolled in a program of study in the United States . . . If you are eligible to apply for a driver's license or a social security number, remember to bring your Form I-20 with you."). Students do not even have access to the SEVIS records about them because SEVIS is a government law enforcement database; SEVIS records are not owned or controlled by the students.

Plaintiffs' confusion that SEVIS record and F-1 status are linked appears to come from the notices sent by Montana State University stating—incorrectly—that F-1 *status* was terminated with the SEVIS record. *See, e.g.*, Doc. 1 at 3. But that information was provided by the school, not by DHS. And for that reason this scenario is entirely distinct from the Third Circuit's decision in *Jie Fang v. Immigration and Customs Enforcement*, 935 F.3d 172 (3d Cir. 2019), in which ICE conducted a sting operation using a fabricated university to identify visa brokers, and when the operation was complete, ICE informed students who were involved, by letter that both their F-1 status and SEVIS record had been terminated. *Id.* at 174–75.

Ultimately, however, the facts of record at this juncture show that the Plaintiffs and others like them—i.e. F-1 students for whom the SEVIS record about them was terminated under the SCAI and who were not placed into removal proceedings—have F-1 status unless and until it is adjudicated otherwise by

21

USCIS or an immigration judge, or the State Department immediately revokes their visa, none of which have occurred here. Thus, to the extent Plaintiffs ever had claims about their F-1 status (and the government maintains they did not), those claims too are moot. *NAGE*, 120 F.4th at 911.

### C.   Voluntary cessation doctrine does not apply

Plaintiffs may argue that the case is not moot because the voluntary cessation exception to mootness applies, and ICE could terminate the SEVIS records again. "[T]he voluntary-cessation doctrine exists to stop a scheming defendant from trying to immunize itself from suit indefinitely by unilaterally changing its behavior long enough to secure a dismissal and then backsliding when the judge is out of the picture, repeating this cycle until it achieves all its unlawful ends." *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (cleaned up). The doctrine is "an evidentiary presumption that the controversy . . . continues to exist," based on "skeptic[ism] that cessation of violation means cessation of live controversy." *Id.* (quoting *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 213–14 (2000) (Scalia, J., dissenting)). Under the voluntary cessation doctrine, the defendant must show that the challenged behavior cannot reasonably be expected to recur. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 96,

22

(2013).  Here, Defendants have made that showing through their actions and declarations.

First, Defendants reactivated all affected SEVIS records months ago, Ex. 4, May 6 Watson Decl. ¶ 5, even though the majority of SEVIS records were not subject to an injunction at that time.[3]  Actions taken only in response to litigation may sometimes be viewed more skeptically, but no such concern exists here because ICE's actions encompassed both records subject to litigation and those that were not, showing that ICE's actions were an all-encompassing policy regardless of litigation status.  Indeed, that is entirely consistent with the ICE policy issued on April 26, 2025, shortly before the reactivations.  *See* Ex. 7, Apr. 26, 2025 Policy.

Second, ICE has stated in a declaration that it will not terminate the records again for the same NCIC hit.  Ex. 6, Baldwin Decl. ¶ 11.  That is consistent with stipulations of dismissal entered in cases throughout the country in which ICE has agreed not to terminate the SEVIS record again for the same reason.  Thus, ICE's actions of stipulating to dismissal on those terms support the credibility of the declaration that states that "ICE will not re-terminate the SEVIS records based

---

[3] The government notes that the Northern District of California subsequently entered a nationwide injunction in a case that was not a class action, even though the SEVIS records had been returned to active weeks before.  *See Doe. v. Trump*, No. 25-cv-3140-JSW (N.D. Cal. May 22, 2025) at Doc. 69.

23

solely on the NCIC hits that led to the initial termination."  Ex. 6, Baldwin Decl. ¶ 11.

Thus, ICE has shown that the challenged behavior cannot reasonably be expected to recur.  *See Already, LLC*, 568 U.S. at 96; *Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 45 (1st Cir. 2024).  Plaintiffs do not have a viable argument to the contrary.  For example, any argument that the declarations are unreliable should be rejected because the declarations are made pursuant to 28 U.S.C. § 1746, and as such may be used as evidence in court.  *See Rodríguez-Severino v. UTC Aero. Sys.*, 52 F.4th 448, 458 (1st Cir. 2022).  That is all the more true when the government makes the representations about cessation.  *See Berge*, 107 F.4th at 45; *see also Freedom from Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1051 (7th Cir. 2018).

If Plaintiffs argue there is a *possibility* that it could recur, that too is insufficient.  "We have never held that the doctrine—by imposing this burden [of not reasonably expected to recur] on the defendant—allows the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place." *Already LLC*, 568 U.S. at 96.  Here, an allegation that conduct might potentially recur is too speculative to support standing, particularly in light of the declarations presented and the attenuated chain of possibilities that must first occur.  *See*

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013) (the "threatened injury must be certainly impending," and "allegations of possible future injury are not sufficient" particularly when the threatened harm is "premised on a highly attenuated chain of possibilities") (quotations/citations omitted).  That is particularly true where the conduct that gave rise to the terminations in the first place—NCIC hits—is individualized conduct to each Plaintiff that has no constitutional protection.  *Cf. Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 242 (2024) (case not moot where conduct that led to No Fly List listing was constitutionally protected—attending mosque—and of a kind that the plaintiff was likely to repeat).

### D.     Plaintiffs' request for forward-looking declaratory or injunctive relief is speculative

Plaintiffs' request for forward-looking declaratory or injunctive relief also cannot remain.  First, a claim for declaratory relief alone does not preserve standing.  *California*, 593 U.S. at 672.  To establish standing, Plaintiffs "need to assert an injury that is the result of . . . actual or threatened *enforcement*, whether today or in the future." *California*, 593 U.S. at 671–72 (collecting cases) (emphasis in original).  And a plaintiff "must show that the likelihood of future enforcement is substantial." *Id.* at 670–71 (citations omitted).  Plaintiffs cannot make that showing here for the same reasons that the voluntary cessation doctrine does not

apply: ICE returned the records to active months ago, ICE has said it will not terminate them again on the same basis, ICE instituted a new policy regarding terminations, and any allegations about future actions are entirely speculative. Furthermore, any such future set of facts is entirely dependent upon Plaintiffs' own behavior. An allegation Plaintiffs may in the future do something (such as failing to maintain status or committing a crime) that may cause ICE to terminate the SEVIS records, is far too speculative to support standing or a declaratory judgment. There is no "persisting redressable injury" here and the case is moot. *NAGE*, 120 F.4th at 911.

To the extent Plaintiffs attempt to rely on *Fikre*, that case does not change the analysis because it turned on the nature of the activity involved. There, the Supreme Court expressed concern over the likelihood of repetition because the targeted conduct—attendance of religious services—was constitutionally protected. *See Fikre*, 601 U.S. at 242 ("To appreciate why [the case is not moot], it is enough to consider one aspect of Mr. Fikre's complaint. He contends that the government placed him on the No-Fly List for constitutionally impermissible reasons, including his religious beliefs."). Fikre's conduct—visiting religious establishments—was also of a nature that may recur frequently, making a potential future injury more concrete. Here, there is no such similar conduct. Police

26

encounters and violations of law are not constitutionally protected activities, nor are they activities that (should) recur frequently. *See Berge*, 107 F.4th at 45 (analyzing voluntary cessation doctrine vis-à-vis declaratory judgment claims after *Fikre* and finding claims moot).

Finally, in their request for injunctive relief, Plaintiffs seek an injunction requiring DHS to comply with certain regulations when adjudicating F-1 student status, including 8 C.F.R. § 214.1(d). Doc. 1 at 18. Plaintiffs do not, however, make any showing, let alone a substantial showing, that DHS has not complied with its own regulations (as DHS did not terminate F-1 student status to begin with, as explained) or that it is not likely to comply with its own regulations in the future. *See California*, 593 U.S. at 671–72 (a plaintiff "must show that the likelihood of future enforcement is substantial"); *see also Clarry v. United States*, 85 F.3d 1041, 1050 (2d Cir. 1996) (no standing because no allegation that plaintiffs had been injured by continued enforcement of policy). Indeed, an agency is required to comply with its own regulations. *See Clarry*, 85 F.3d at 1047 (explaining *Accardi* doctrine as requiring "that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency"). Without a substantial showing, there is no controversy for this Court to address, and those claims are also moot. *See California*, 593 U.S. at 670–71.

27

## CONCLUSION

This case is moot.  The plaintiffs and others similarly situated have received the primary relief sought, there is no ongoing injury to redress, nor is there the likelihood of a future injury to redress.  This Court should dismiss the case in its entirety and without prejudice for lack of jurisdiction.

DATED this 22nd day of September, 2025.

KURT G. ALME
United States Attorney


/s/ John M. Newman
Assistant U.S. Attorney
Attorney for Defendants

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 5,975 words, excluding the caption and certificates of service and compliance.

DATED this 22nd day of September, 2025.

/s/ John M. Newman
Assistant U.S. Attorney
Attorney for Defendants

29