IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JOHN ROE and JANE DOE, | CV 25–40–BU–DLC |
| Plaintiffs, | |
| vs. | ORDER |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, | |
| Defendants. | |

This matter comes before the Court on Defendants Department of Homeland Security ("DHS"), Todd Lyons, and Kristi Noem's ("Defendants" or "the Government") Motion to Dismiss for Lack of Jurisdiction. (Doc. 32.) The Court held a hearing on the Motion on December 2, 2025 (Doc. 40), and the matter is ripe for ruling. For the reasons herein, the Motion will be denied.

## BACKGROUND

### I.    The F-1 Visa Program and SEVIS

The Immigration and Nationality Act ("INA") permits noncitizens to enroll in government-approved academic institutions as F-1 nonimmigrant students. *See* 8

1

U.S.C. § 1101(a)(15)(F); 8 C.F.R. § 214.1(a)(2). Foreign students may enter the United States on an F-1 visa, and, upon entry, be granted F-1 student status and remain in the United States for the duration of their status. "Duration of status" is defined as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified [] for attendance by foreign students, or engaging in authorized practical training following completion of studies." *Id.* § 214.2(f)(5)(i).

The U.S. Immigration and Customs Enforcement ("ICE"), a subagency of the Department of Homeland Security ("DHS"), administers the F-1 student program and tracks information on students with F-1 student status through the Student and Exchange Visitor Program ("SEVP"). *Id*. § 1372(a)(1)(A). To sponsor a student's F-1 status, an academic institution must first file an application for School Certification through the SEVIS program, a SEVP-managed internet-based system used to track and monitor schools and noncitizen students in the United States. *Id*. § 214.3. Montana State University ("MSU") has been formally approved to sponsor F-1 students, and the institution has a Designated School Official ("DSO") to advise and oversee foreign students.

F-1 students may participate in two types of practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *Id*. § 214.2(f)(10). CPT is any "alternative work/study, internship, cooperative

2

education or any other type of required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school." *Id.* § 214.2(f)(1)(i). OPT consists of temporary employment that is "directly related to the student's major area of study." *Id*. § 214.2(f)(10)(ii).

A nonimmigrant student who "fail[s] to maintain the nonimmigrant status in which the alien was admitted" is subject to removal from the United States. 8 U.S.C. § 1227(a)(1)(C)(i). A student fails to maintain their F-1 status for a number of reasons, including, for example, engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of greater than one year. *See* 8 C.F.R. § 214.1(e)–(g). The student must also maintain a full course of study at an educational institution certified by SEVP. *Id.* § 214.2(f)(5)(i). Separately, the Code of Federal Regulations permits the termination of nonimmigrant status in three specific circumstances: (1) a previously granted waiver under Section 212(d)(3) or (4) of the Act is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. *Id.* § 214.1(d).

A nonimmigrant student who fails to maintain F-1 status must leave the United States immediately or seek reinstatement. *Id.* § 214.2(f)(5)(iv). Though a student may seek reinstatement of his status in SEVIS, the student is not required

3

to do so. *Doe v. Noem*, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025). If a student seeks reinstatement or on its own accord, the United States Citizenship and Immigration Services ("USCIS") may consider reinstating a student who demonstrates, among other things, that he "has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement" or that "the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances." 8 C.F.R. § 214.2(f)(16)(i)(A). If USCIS does not reinstate the student's status, the student may not appeal that decision. *Id.* § 214.2(f)(16)(ii).

## II.    The Present Dispute

As the Court and parties are aware, this case arises out of ICE's March 2025 Student Criminal Alien Initiative ("SCAI"), wherein ICE terminated thousands of SEVIS records for foreign university students across the United States following the agency's National Crime Information Center's ("NCIC") records search.

Plaintiffs John Roe and Jane Doe ("Plaintiffs") are full-time international students currently enrolled in graduate programs at Montana State University ("MSU") in Bozeman, Montana. (Doc. 1 ¶ 2.) Roe, a citizen of Iran, received an F-1 visa to study in the United States on July 26, 2016, and Doe, a citizen of Turkey, first arrived in the United States on an F-1 visa in 2014. (*Id.* ¶¶ 20, 27.)

On April 10, 2025, Plaintiffs received an email from MSU informing them that their SEVIS record had been terminated. (Docs. 4 ¶ 17; 5 ¶ 16.) According to the email, Plaintiffs' SEVIS record indicated the following: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." (Docs. 6-2 at 2; 6-3 at 2.) The email further provided that "international students with a terminated status are no longer able to remain enrolled in classes," lose their employment authorization, and are "expected to depart the United States immediately. Unlawful presence in the United States could result in arrest, detention or deportation by federal authorities." (*Id.*) Both Plaintiffs have been charged with misdemeanor violations before the Bozeman Municipal Court; neither have been convicted of any offense. (*See* Docs. 18-4 ¶¶ 2, 3–4; 18-5 ¶ 2, 4–6.)

On April 14, 2025, Plaintiffs filed the present lawsuit against Kristi Noem, in her official capacity as Secretary of DHS, DHS, and Todd Lyons, in his official capacity as Acting Director of ICE, alleging that Defendants unlawfully terminated their SEVIS records. (Doc. 1 ¶ 15.) Also on April 14, Plaintiffs filed an Emergency Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction. (Doc. 2.) On April 15, this Court issued a TRO for a period of 14 days, mandating, in part, that Defendants restore Plaintiffs' SEVIS records and not terminate Plaintiffs' SEVIS records absent a valid ground as set forth in 8 C.F.R. § 214.1(d).

(Doc. 11.)

Defendants subsequently restored Plaintiffs' SEVIS statuses sometime before April 29, 2025. On April 25, DHS announced a "new policy" governing SEVIS records, and on April 28, the Government filed a document purporting to set out this new policy. (*See* Doc. 13-1.) On April 29, this Court held a hearing on Plaintiffs' Motion for Preliminary Injunction and orally extended the TRO until May 13. (Doc. 22.) This Court converted its TRO into a preliminary injunction on May 13; that preliminary injunction remains in place. (Doc. 24.)

On September 22, 2025, Defendants filed a Motion to Dismiss, arguing this Court no longer has jurisdiction because Plaintiffs' claims are moot. (Doc. 33.) This Motion to Dismiss follows several similar motions filed in SEVIS-related matters around the country. *See, e.g., Vemula v. Noem*, 1:25-cv-04561 (N.D. Ill. Apr. 25, 2025); *Student 1 v. Noem*, 3:25-cv-02871 (D.N.J. Apr. 18, 2025); *Ariwoola v. Noem*, 3:25-cv-03313 (D.S.C. Apr. 18, 2025); *Castellanos v. Noem*, 1:25-cv-00080 (S.D. Tex. Apr. 15, 2025); *B.K. v. Noem*, 1:25-cv-00419 (W.D. Mich. Apr. 14, 2025); *Patel v. Lyons*, 1:25-cv-1096 (D.D.C. Apr. 11, 2025). The Court held a hearing on the Motion on December 2, 2025 (Doc. 40), and the matter is ripe for ruling.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The courts are presumed to "lack jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3 (2006). The burden of establishing the existence of subject matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "The district court resolves a facial attack[] as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.*

"At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 592 U.S. 279 282 (2021). "To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury. And if in the course of litigation a court finds that it can no longer provide a

plaintiff with any effectual relief, the case generally is moot." *Id.* In short,

"[m]ootness demands that there be something about the case that remains alive,

present, real, and immediate so that a federal court can provide redress in some

palpable way." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). A

plaintiff's "personal stake in the action" is eliminated when there is no "persisting

redressable injury." *NAGE, Inc. v. Yellen*, 120 F.4th 904, 911 (1st Cir. 2024).

Claims "based on . . . past injuries" can become moot when circumstances change.

*Id.*

## DISCUSSION

Defendants argue this case is moot because Plaintiffs' SEVIS records have

been retroactively reactivated. (Doc. 33 at 21–22 (citing *Vertex Tower Assets, LLC

v. Town of Wakefield*, 771 F. Supp. 3d 80, 89 (D.N.H. 2025) (claims resolved by

defendant during pendency of lawsuit deemed moot)).) Defendants further assert

that ICE has changed its SEVIS record policy and will not terminate student

records for the same NCIC hit that resulted in the previous terminations. (Doc. 33

at 29 (citing Doc. 33-6 ¶ 11).) Plaintiffs counter that the doctrine of voluntary

cessation precludes a finding of mootness. (Doc. 34 at 14.) The Court agrees with

Plaintiffs.

### I.    Doctrine of Voluntary Cessation

"A case becomes moot . . . when the issues presented are no longer live or

the parties lack a legally cognizable interest in the outcome." *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019). However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "But voluntary cessation can yield mootness if a 'stringent' standard is met: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014) (quoting *Friends of the Earth*, 528 U.S. at 189). "[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot, but it may do so in certain circumstances." *Id.* at 971.

Though the Ninth Circuit has "not set forth a definitive test for determining whether a voluntary cessation" reflected through policy change renders a case moot, it has enumerated several factors that indicate mootness is more likely. *Id.* at 972. These factors include whether:

(1) the policy change is evidenced by language that is broad in scope and unequivocal in tone;

(2) the policy change fully addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case;

9

(3) th[e] case [in question] was the catalyst for the agency's adoption of the new policy;

(4) the policy has been in place for a long time; and

(5) since [the policy's] implementation[,] the agency's officials have not engaged in conduct similar to that challenged by the plaintiff.

*Id.* The Court is "less inclined to find mootness where the new policy could be easily abandoned or altered in the future." *Id.*

Here, the Government argues that (1) its reinstatement of Plaintiffs' SEVIS records moots Plaintiffs' request for relief, (2) ICE has agreed not to terminate SEVIS records again for the same NCIC hit, and (3) ICE has issued a new policy guiding SEVIS terminations. (Doc. 33 at 8, 29.) Defendants conclude that, as a result, "ICE has shown that the challenged behavior cannot reasonably be expected to occur." (*Id.* at 30.)

The new SEVIS policy is outlined in a document entitled "Broadcast Message," effective on or around April 26, 2025, and has been filed with the Court as "SEVP Policy." (Doc. 33-7.) The Government also provides two declarations in support of this new policy: a May 2025 declaration issued by Andrew Watson (the "Watson Declaration"), the Senior Official within the National Security Division ("NSD") for Homeland Security Investigations ("HSI") (Doc. 33-4), and a July 2025 declaration issued by Akil Baldwin (the "Baldwin Declaration"), the Acting

Assistant Director for the National Security Division of HSI (Doc. 33-6). (Doc. 33 at 21.)

The Watson Declaration states that "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) [sic] SEVIS record based solely on the NCIC record that led to its initial termination." (Doc. 33-4 ¶ 7.) The Baldwin Declaration attests that "[c]onsistent with its new SEVIS policy, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination or solely on any related visa revocation that is effective upon departure." (Doc. 33-6 ¶ 11.) The Government's reliance on these three documents, however, fails to overcome their "heavy burden" of persuading this Court that the challenged conduct cannot easily be repeated. *See Rosebrock*, 745 F.3d at 971 ("The party asserting mootness bears a "heavy burden[]"). The Court reaches this conclusion after consideration of the five *Rosebrock* factors.

The first *Rosebrock* factor—whether the policy change is "broad in scope and unequivocal in tone"— weighs against a finding of mootness. As an initial concern, it is unclear whether the Broadcast Message does, in fact, reflect DHS "policy." The Broadcast Message first provides that,

> SEVP can terminate records for a variety of reasons, including, but not limited to the following reasons:
>
> - Exceeded Unemployment Time
> - Failure to Comply with I-515A
> - Failure to Repay the I-901 Fee Chargeback

11

- Failure to Report While on OPT
- No Show
- School Withdrawn
- Violation of Change of Status Requirements
- Change of Status approved
- Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists
- U.S. Department of State Visa Revocation (Effective Immediately)

(Doc. 33-7 at 1.) The Broadcast Message continues that "[w]hen SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis." (*Id.* at 2.) Notably, however, the Broadcast Message concludes with an express disclaimer: "this message is not a substitute for applicable legal requirements nor is it a final action by SEVP. It is not intended to be relied upon or enforceable by any law." (*Id.*)

Moreover, to the extent the Broadcast Message does represent DHS policy, it is not evident that this policy is "new." As detailed above, the Broadcast Message still permits SEVP to terminate records for reasons other than those listed above—including, for example, an NCIC hit. Indeed, the Broadcast Message fails to say anything about the core of this case: that these Plaintiffs' SEVIS records were terminated based upon alleged criminal conduct for which there was no conviction and no possibility of jail time beyond one year.

Defendants rely upon the Baldwin and Watson Declarations to overcome this apparent gap in the Broadcast Message. However, while the Government is

entitled to a "presumption of legitimacy [in its] official conduct," *see National Archives and Records Administration v. Favish*, 541 U.S. 157, 174–75 (2004), these Declarations fail to assuage the Court of its concerns. The Baldwin Declaration attests that "[c]onsistent with its new SEVIS policy, ICE will not re-terminate SEVIS records based solely on the NCIC record that led to the initial termination[.]" (Doc. 33-6 ¶ 11.) Yet as discussed, the record is unclear as to what this "new policy" entails or whether it protects Plaintiffs from future terminations based upon an NCIC hit. Moreover, the Baldwin and Watson Declarations are internally inconsistent, suggesting that not even the authors know what is intended: is it that the Government has "no plans" to terminate records on the basis of an NCIC hit, as Watson attests, or is it that the new policy precludes termination based solely on an NCIC hit, as Baldwin asserts? Such hedging and narrow language "falls short of demonstrating that [Defendants] cannot reasonably be expected to do again in the future what [they are] alleged to have done in the past." *FBI v. Fikre*, 601 U.S. 234, 242 (2024). In short, if this policy is in fact new, it does not unequivocally "prohibit the Government from re-terminating Plaintiff['s] SEVIS record[s] on the same, or a similar, improper basis." *Zhou v. Lyons*, Dkt. 34 at 10, 2:25-cv-02994-CV (C.D. Cal. November 6, 2025).

The second *Rosebrock* factor—whether the policy fully addresses the objectionable measures taken against Plaintiffs—weighs against Defendants for

largely the same reasons. Although ICE has reactivated Plaintiffs' SEVIS records, it is simply not clear what DHS's new policy is and, consequently, whether that new policy fully addresses the issues presented in this case. As to the third factor—whether this matter was the catalyst for the agency's change—the record strongly suggests that this is the case.

With respect to the fourth factor, although several months have passed since the Government announced its new policy via the Broadcast Message and supporting Declarations, the Court finds that any new policy "could be easily abandoned or altered in the future." *A.O. v. Cuccinelli*, 457 F. Supp. 3d 777, 788 (N.D. Cal. 2020) (citing *Rosebrock*, 745 F.3d at 972). Indeed, the Broadcast Message is, by its own terms, explicitly temporary. (*See* Doc. 33-7 at 2) ("This Broadcast Message is not a substitute for applicable legal requirements, nor is it itself a rule or final action by SEVP."). However, because it appears Defendants have not re-engaged in the specific conduct challenged here, the final factor weighs in favor of the Government.[1]

On balance, the Court finds that the *Rosebrook* factors weigh against a

---

[1] The Court notes, however, that the Government has continued to enact policies targeting international students studying in the United States. For instance, on May 22, Secretary Noem issued a letter to Harvard University decertifying the university's SEVP status, thereby prohibiting the school from enrolling any students with F- or J- nonimmigrant status. *See* Letter from Kristi Noem, Secretary of Homeland Security, to Harvard University (May 22, 2025).

14

finding of mootness. It is simply not "absolutely clear" that the challenged conduct will not recur. *See Rosebrock*, 745 F.3d at 971 (quoting *Friends of the Earth*, 528 U.S. at 189). Indeed, as this Court observed in its May 13, 2025, Order, "Defendants' approach to these particular issues presents an ever-changing landscape." (Doc. 24 at 8.) That observation remains unchanged. Because this case continues to present a live case or controversy, the Court need not address Defendants' arguments with respect to forward-looking declaratory or injunctive relief.

## CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 32) is DENIED.

DATED this 26th day of January, 2026.

Dana L. Christensen, District Judge
United States District Court